```
C/M
```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
:
TIMOTHY J. MURRAY,                              :
                Petitioner,    :  **MEMORANDUM DECISION AND**
:  **ORDER**
      - against -                         :
:  17-cv-26 (BMC)
THOMAS GRIFFIN,                                 :
:
                Respondent.    :
:
----------------------------------------------------------------- X

**COGAN**, District Judge.

      Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, setting aside his conviction for multiple counts of robbery and one count for possession of stolen property. The facts relating to his conviction will be set forth below as necessary to address his points of error, but to summarize, petitioner, together with an unapprehended accomplice, mugged a woman, Margaret Whittaker, hitting her in the face and taking her purse. The police had obtained a search warrant for petitioner's home on suspicion of his involvement in other robberies, and when they executed it, they found Whittaker's driver's license in his apartment. Whittaker picked petitioner out of a lineup and identified him as her assailant at trial.

      Plaintiff raises three points of error: (1) the lineup was unduly suggestive because petitioner was the only one with dreadlocks, and the police suggested to Whittaker that her assailant was in the lineup; (2) petitioner's counsel was ineffective because in his motion to suppress the search warrant, he omitted better arguments than he made; and (3) the prosecutor's closing argument deprived petitioner of due process.

Each of these points is either procedurally barred or without merit, and the petition is therefore denied.

I.  **Lineup identification**

The Appellate Division summarily rejected this claim, holding that "[c]ontrary to the defendant's contention, the suppression court properly declined to suppress the lineup identification evidence on the ground that it was unduly suggestive." People v. Murray, 136 A.D.3d 714, 715, 24 N.Y.S.3d 194 (2nd Dep't), leave to appeal denied, 27 N.Y.3d 100, 438 N.Y.S.3d 112 (2016).

Because the Appellate Division rejected the claim on the merits, its decision attracts the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). That statute requires petitioner to demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405 (2000) (internal quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow, and is intended only as "a 'guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal . . . .'" Ryan v. Gonzales, 568 U.S. 57, 75 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 102-03 (2011)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Since Harrington, the Supreme Court has repeatedly admonished Circuit Courts for not affording sufficient deference to state court determinations. See, e.g., White v. Wheeler, 136 S. Ct. 456, 460 (2015) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'") (quoting Burt v. Titlow, 134 S. Ct. 10, 16 (2013)).

As applied to identification evidence, due process requires the exclusion of identification testimony that is so unreliable as to create "a very substantial likelihood of irreparable misidentification." Manson v. Brathwaite, 432 U.S. 98, 116 (1977) (internal quotation marks and citation omitted). To be admissible, the court must find either that the identification procedures were not unduly suggestive or that the identification was independently reliable despite any unnecessarily suggestive procedure. See id. at 114; Neil v. Biggers, 409 U.S. 188, 199 (1972); Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001).

Claiming that the physical arrangement of a lineup was unduly suggestive on federal habeas corpus review is particularly difficult because a state court's determination that it was not is treated as a finding of fact. And "a determination of a factual issue made by a State court shall be presumed to be correct[,]" subject to rebuttal by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Moreover, "there is no requirement that even in line-ups the accused must be surrounded by persons nearly identical in appearance, however desirable that may be." United States v. Reid, 517 F.2d 953, 965 n. 15 (2d. Cir. 1975); accord Espiritu v. Haponik, No. 05 Civ.

7057, 2012 WL 161809 at *6 (S.D.N.Y. Jan. 19, 2012) ("[F]actual findings of the state court regarding the suggestiveness of the lineup must be presumed correct in the absence of clear and convincing evidence to the contrary.").

I have reviewed the same photographs of the lineup as the state court. I cannot say that the photographs refute the state court's finding by clear and convincing evidence. I will assume that there is a part of one dreadlock showing on one of the participants in the lineup because the parties seemed to acknowledge that on appeal, but it is not at all visible in the photographs. Under the AEDPA review standard, the state courts' determination must be upheld.

Petitioner's other criticism of the lineup is that, when the detective in charge of the investigation called Whittaker and asked her to come view it, he told her that the police "made an arrest of somebody that may have been in possession of her New York State driver's license." However, under well-established federal law, this is not unduly suggestive. Not only did the detective fail to definitively advise the witness that the suspect was, indeed, in the lineup, but the law is clear that even had he had so advised her, that would not be considered sufficiently suggestive to have violated petitioner's due process rights. Habeas decisions in this Circuit have consistently held that "[a] substantial likelihood of irreparable misidentification is not created when police officers merely tell a lineup viewer that the suspected perpetrator will be in the lineup." Priester v. Strack, No. 98 Civ. 7960, 2001 WL 980563, *4 (S.D.N.Y. Aug. 23, 2001) (citing Hodge v. Henderson, 761 F. Supp. 993, 1007-08 (S.D.N.Y. 1990) ("[I]t is implicit in the viewing of a lineup that a suspect might appear . . . . [S]uch information does not predispose the viewer of the lineup to select any particular person . . . .")); Green v. Connell, No. 05-CV-5795, 2006 WL 3388656, *8 (E.D.N.Y. Nov. 21, 2006) ("[I]t is implicit in the display of a line-up that a suspect is among the persons viewed, and stating this fact to a witness is thus insufficient to

create a substantial likelihood of misidentification."); see also Jenkins v. City of New York, 478 F.3d 76, 93 (2d Cir. 2007) ("This Court . . . has held that although the police generally should refrain from informing a witness that the suspect is in the lineup, a lineup is not unduly suggestive merely because they do so."); Sales v. Harris, 675 F.2d 532, 538 (2d Cir. 1982) ("As to the lineup, the only hint of suggestiveness emanated from the police officer's statement to [the victim] just prior to viewing the lineup that a suspect was in custody. Although this court has expressed disapproval of such a statement, the suggestiveness in this case was minimal . . . .") (internal citation omitted).

Of particular importance is the fact that petitioner must show that the Appellate Division's decision is contrary to or an unreasonable application of Supreme Court authority concerning identification of witnesses, and no Supreme Court decision suggests that a police officer may not advise a lineup witness that they have a suspect in custody, let alone merely saying something that allows an inference that the suspect may be in custody. See Piper v. Portuondo, 82 F. App'x 51, 52 (2d Cir. 2003) ("[N]either we nor the Supreme Court has ruled that such statements, by themselves, render a lineup impermissibly suggestive."). Since the police merely advised the victim that the suspect "may" have had possession of her license, without even confirming whether the suspect would be in the line-up, petitioner cannot meet the standard for habeas corpus relief.

## II.   Ineffective Assistance of Trial Counsel

### A. Background

Prior to petitioner's arrest, police had been investigating several pattern robberies in the neighborhood where Whittaker was attacked. The police were particularly looking for a vehicle that been seen in connection with the prior robberies, specifically, a gold Chevy Tahoe with a

5

Harley-Davidson sticker on the back. There was a poster containing this description of the vehicle hanging in the neighborhood precinct. In addition, one of witnesses to the earlier robbery identified the license plate number of the vehicle as "EJU 6444."

Prior to embarking on an unmarked patrol, an officer named Jason Summo observed the poster and asked the detective on the case, William Bravo, about the vehicle. Bravo told Summo the additional detail that the suspected vehicle's front and rear wheels were mismatched.

While on patrol in an unmarked car with a partner, Summo observed a vehicle moving in the opposite direction of his that was in violation of the Vehicle and Traffic Law in two respects. First, its headlights projected blue instead of white light. Second, there was an object hanging from the rear-view mirror that could obstruct the driver's view. As he made a U-turn to get behind the vehicle, Summo observed that it matched the description of the vehicle in the precinct poster as augmented by Bravo, *i.e.*, a gold Chevy Tahoe with a Harley Davidson sticker on the back and mismatched front and rear wheels.

Summo called for back-up and he and his partner approached the vehicle with guns drawn. Petitioner was driving. After Summo removed petitioner from the vehicle, he observed an unmarked bottle of pills in plain view inside. Summo took petitioner and the vehicle into custody.

After speaking to Summo back at the precinct, Sergeant Ronald Buell, who was familiar with the pattern robberies, prepared an affidavit in support of a search warrant for petitioner's home. He went to the District Attorney's office and an Assistant District Attorney obtained a warrant based on the affidavit. The warrant allowed the seizure of, *inter alia*, "any and all forensic evidence of a robbery." During the search, the police found Whittaker's driver's

license, and, as noted above, Whittaker subsequently identified petitioner in the lineup as her assailant.

   **B. State Court Proceedings**

   In a suppression hearing, petitioner's counsel contended, *inter alia*, that there was no probable cause for the issuance of the search warrant. He relied, in part, on a complaint form that Summo had filed out in which he described the vehicle as "gray" rather than "gold-toned." He also noted that the witness to the prior robbery had described the vehicle somewhat differently than the affidavit in support of the warrant, including a slightly different license plate number ("EJU 6684" v. "EJU 6444"), and that the warrant application did not mention that the vehicle had a cracked windshield and blue headlights, as did petitioner's. He also argued that the affidavit in support of the search warrant referred to a rear sticker that was "similar to" a Harley Davidson logo, not that it was in fact a Harley Davidson logo. Finally, he argued that even if the warrant was valid, it did not authorize a search for or allow an arrest based on evidence from the Whittaker robbery, since it only pertained to evidence from the prior robberies. The suppression court denied the motion to suppress.

   On direct appeal, petitioner contended that his trial counsel had been ineffective because there were two better arguments in support of suppression which he did not make. The first was that the mere fact that petitioner owned the vehicle described in the report of prior robberies did not provide sufficient probable cause for a warrant to search petitioner's home. The second was that the search warrant only allowed seizure of items that constituted evidence of robbery, and Whittaker's driver's license, by itself, was not evidence of a robbery.

   Although appellate counsel abandoned the arguments that trial counsel had raised, calling them "untenable," the Appellate Division rejected them anyway, finding that:

7

> To the extent that the defendant contends that the warrant authorizing the search of his apartment was not supported by probable cause, his contention is without merit. To establish probable cause, a search warrant application must provide sufficient information to support a reasonable belief that evidence of a crime may be found in a certain place. Search warrants, which generally are not composed by lawyers but rather by police officers, should not be read hypertechnically and may be accorded all reasonable inferences. Here, the suppression court correctly determined that the affidavit upon which the warrant was issued contained information sufficient to support a reasonable belief that evidence of illegal activity would be present at the defendant's apartment.

Murray, 136 A.D.3d at 714, 24 N.Y.S.3d at 194 (citations and quotation marks omitted). As to the new Fourth Amendment arguments made on appeal, the Appellate Division held that

> To the extent that the defendant now makes additional arguments regarding a lack of probable cause to issue the search warrant, and further argues that the recovery of certain physical evidence from his apartment exceeded the scope the warrant, the contentions are unpreserved for appellate review and, in any event, without merit.

Id. (citation omitted). And, to the extent that trial counsel failed to make these new arguments, the Appellate Division held summarily that petitioner's "contention that he was deprived of the effective assistance of counsel during the pretrial proceedings is without merit." Id. at 715, 24 N.Y.S.3d at 195.

### C. Analysis

First, although the Appellate Division, apparently *sua sponte*, addressed the argument for suppression that trial counsel had made, there is no need for me to review that ruling here. Petitioner, in seeking leave to appeal to the New York Court of Appeals, did not advance that argument (as he had not advanced it in the Appellate Division), and, since there can be no further proceedings on direct appeal, see N.Y. Crim. Proc. § 450.10(1) N.Y. Ct. Rules, § 500.10(a) (authorizing only one request for review of a conviction), it is deemed exhausted and procedurally barred in this Court. See, e.g., Jones v. Murphy, 694 F.3d 225, 247 (2d Cir. 2012); St. Helen v. Senkowski, 374 F.3d 181, 183-84 (2d Cir. 2004); Aparicio v. Artuz, 269 F.3d 78, 90

8

(2d Cir. 2001); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). In addition, I note that in his habeas corpus petition, petitioner has only raised the claims that his appellate counsel made, and thus the grounds for suppression advanced by his trial counsel are not before me.

What is before me in the first instance is the review of the Appellate Division's ruling that his appellate counsel's new Fourth Amendment arguments, raised for the first time on appeal, are "unpreserved for appellate review . . . and, in any event, without merit." Murray, 136 A.D. at 714, 24 N.Y.S.3d at 194. This holding erects a procedural bar prohibiting review in this Court. A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment." Lee v. Kemna, 534 U.S. 362, 375 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)) (emphasis omitted). When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the state court's decision. See, e.g., Coleman, 501 U.S. at 729-30; Murden v. Artuz, 497 F.3d 178 (2d Cir. 2007). State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Lee, 534 U.S. at 376 (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)). If a state court rejects a specific claim on an adequate and independent state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the

state court's judgment, even when the state court also relies on federal law.") (emphasis omitted).

I see nothing exorbitant about the Appellate Division's invocation of a procedural bar as to arguments that petitioner raised for the first time on appeal. There was no reason why the Appellate Division should have been the first court to hear appellate counsel's theory of suppression. Indeed, appellate counsel recognized that but for the alleged ineffective assistance of petitioner's trial counsel, the claim was unpreserved for appeal. The claim is therefore procedurally barred from review in this Court.

However, once it is determined that a claim is procedurally barred under state procedural rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. See Coleman, 501 U.S. at 750; Harris, 489 U.S. at 262. The latter avenue, a miscarriage of justice, is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. See Murray v. Carrier, 477 U.S. 478 (1986).

The first avenue, cause for the default and prejudice therefrom, can be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that 'some interference by state officials' made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (citing Murray, 477 U.S. at 488) (alteration in original). Although, in some circumstances, ineffective assistance of counsel can constitute "cause" sufficient to avoid a procedural default, see Murray, 477 U.S. at 488-89, the ineffective assistance claim must itself have been exhausted in the state court. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).

Here, as noted above, petitioner exhausted his ineffective assistance of trial counsel claim by raising it on direct appeal to the Appellate Division, and again in his application for leave to the New York Court of Appeals. I thus need to determine if the Appellate Division's rejection of this ineffective assistance claim warrants habeas corpus relief.

Because the Appellate Division reached the merits of this claim, my review is again constrained by the AEDPA. This imposes a double burden on petitioner because not only is the AEDPA standard of review narrow, but the criteria for proving a claim of ineffective assistance of counsel under the Sixth Amendment is also narrow. To show a Sixth Amendment violation of the right to effective assistance of counsel, petitioner must meet the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, he must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. The court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (internal quotation marks and citation omitted). Second, under the "prejudice" prong, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112.

With regard to the identification of the vehicle as sufficient grounds to obtain a search warrant, all of the rather sparse authority upon which petitioner's appellate counsel relied pertained to probable cause to arrest or detain without an arrest warrant, not probable cause to obtain a search warrant. Although the inquiries are similar, the focus is different. See Zurcher v. Stanford Daily, 436 U.S. 547, 555, 557 n.6 (1978) (explaining that probable cause for a search

11

warrant does not necessarily justify an arrest because, "[e]ach requires probabilities as to somewhat different facts and circumstances . . . . [W]hile probable cause for arrest requires information justifying a reasonable belief that a crime has been committed and that a particular person committed it, a search warrant may be issued on a complaint which does not identify any particular person as the likely offender . . . [and] without any showing that the occupant is guilty of any offense whatever.") (internal quotation marks and citations omitted).

Even putting that distinction aside, petitioner's appellate counsel recognized that he was criticizing trial counsel without being able to cite to any controlling authority upon which trial counsel could have relied. As petitioner stated in his motion for leave to appeal to the Court of Appeals: "This Court has never squarely addressed whether driving a car allegedly involved in a crime constitutes 'information sufficient to support a reasonable belief that . . . evidence of a crime may be found in a certain place' – here, the driver's home – as is required for probable cause."

Petitioner cited only one case from the New York Court of Appeals, People v. Hicks, 68 N.Y.2d 234, 508 N.Y.S.2d 163 (1986), where the issue was "in the absence of probable cause, whether and when it is permissible for the police, having made a lawful stop, to detain the suspect and transport him to the crime scene for possible identification." That decision had little, if anything, to do with petitioner's case. Although it contained dictum that somewhat supported petitioner's position, the Court of Appeals carefully qualified that dictum, finding that it could not hold "as a matter of law" that a stop of a suspect vehicle gave probable cause to arrest the suspect. It therefore did not address whether it would disturb the exercise of discretion by the Appellate Division under all the circumstances of the case. Moreover, it affirmed the Appellate Division's decision which, in turn, upheld the transport of the suspect to a show-up based, in

part, on the vehicle. The Hicks case was therefore a poor candidate upon which a court could rely to find ineffective assistance of trial counsel in the instant case for not raising it.

The only other controlling authority upon which petitioner urged the Appellate Division to find ineffective assistance of counsel was an Appellate Division decision, People v. Sellers, 168 A.D.2d 581, 562 N.Y.S.2d 798 (2nd Dep't 1990), which, like Hicks, dealt with probable cause to arrest, not probable cause to obtain a search warrant. Other than that, petitioner cited one *nisi prius* decision. Indeed, the fact that the Appellate Division in the instant case found that petitioner's trial counsel was not ineffective is some indication that it viewed the facts as sufficient to support the issuance of a search warrant under New York law. And the one United States Supreme Court case that petitioner cited, Chambers v. Maroney, 399 U.S. 42 (1970), upheld probable cause – again, for arrest, not to search, as no search issue was before the Court – based on more than the similarity of the apprehended vehicle.

Trial counsel chose to focus on the concrete facts – that the car under investigation had differences from the car described in the search warrant – and that probable cause was therefore lacking. He made that choice instead of opting for the broader and more ambitious theory advocated by appellate counsel – that driving a car allegedly involved a crime does not constitute probable cause to believe that the proceeds of the crime may be found in the driver's home. Fairminded jurists could certainly disagree as to which one of these is the stronger theory.

And it does not help petitioner that, although the Appellate Division held appellate counsel's theory to be procedurally barred, it also held that in the alternative it had no merit. This means that even had trial counsel preserved it for review by the Appellate Division, that Court would have rejected it anyway. Under these circumstances, and especially given the

13

doubly-deferential standard for habeas review of ineffective assistance of trial counsel claims, petitioner is not entitled to relief.

With regard to the seizure of Whittaker's driver's license, I similarly can find no objective unreasonableness in trial counsel's decision not to press the point that appellate counsel, again unsuccessfully, chose to press. Appellate counsel claimed there was no "nexus" between petitioner's car and Whittaker's license, but the warrant permitted the police to seize items other than contraband – "all forensic evidence of a robbery." If police officers looking at the home of a potential robbery suspect find a driver's license of someone who doesn't live there, and which has no reason for being on the premises, they are entitled to seize it and investigate further. All they need is reasonable suspicion to believe that it might be the product of a robbery, and with Whittaker's name certainly not being on petitioner's door, they had that. At the very least, both a reasonable trial lawyer and a reasonable jurist could think that they did.

Accordingly, plaintiff's claim of ineffective assistance of trial counsel is rejected.

### III.    Prosecutorial Misconduct

Under federal law, a prosecutor has wide latitude in making his closing argument. See United States v. Casamento, 887 F.2d 1141, 1189 (2d Cir. 1989). Even where a prosecutor has made improper comments in summation, habeas relief is not warranted unless those remarks rendered the trial, as a whole, "fundamentally unfair." Darden v. Wainwright, 477 U.S. 168, 181-83 (1986). To be entitled to habeas relief, a petitioner must show "that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (holding that habeas relief is warranted only where the prosecution's claimed misconduct "so infected the trial with

14

unfairness as to make the resulting conviction a denial of due process"). In addition, the state courts' determination that petitioner's due process rights were not violated is entitled to deference under AEDPA, as described above.

On appeal, petitioner contended that the prosecutor's closing was excessive because the prosecutor made the following remarks: (1) she told the jury that the victim would "never forget" this "heinous," "brutal" crime, thereby appealing for sympathy towards the victim; (2) she vouched for the complainant's testimony by saying the complainant would "never forget" her robber's face and describing the complainant as "educated"; "married"; "involved in her church"; and someone who "spend[s] her spare time counseling youth"; (3) she referred to facts that had been stricken from the record; (4) she denigrated the defense as "ridiculous"; (5) she called on petitioner to provide a "reasonable explanation" for possessing the stolen property, thereby shifting the burden to him; and (6) she told the jury that only a guilty verdict would support justice.

The Appellate Division's rejection of this claim was multi-faceted:

> [T]he defendant's contention that he was deprived of a fair trial as a result of certain remarks made during the People's summation is partially unpreserved for appellate review. In any event, most of the challenged summation remarks were either fair comment on the evidence, or responsive to arguments and theories presented in the defense summation. To the extent that any remaining challenged remarks were improper, they were not so egregious as to deprive the defendant of a fair trial.

Murray, 136 A.D.3d at 715, 24 N.Y.S.3d at 194 (internal citations omitted).

I note at the outset that because the Appellate Division did not distinguish the objections that were unpreserved from the objections that were without merit, I am to consider the decision as ruling on the merits of the claim, without regard to any possible procedural bar, but with

15

deference to a ruling on the merits required under AEDPA. See Jimenez v. Walker, 458 F.3d 130, 145 (2d Cir. 2006).

Having reviewed the record, I think that, if anything, the Appellate Division was overly indulgent to petitioner. There was really nothing wrong with this closing. His protest that the prosecutor referred to the victim as educated, for example, was in response to defense counsel's argument in which he also called the victim educated and suggested that an educated victim was unlikely to miss the couple of details that he thought she had missed. The prosecutor responded that the victim's education made her more likely to give accurate information. There was nothing that suggested any effort by the prosecutor to switch the burden of proof; all the prosecutor did was criticize defense counsel's points, which she is entitled to do. Petitioner's appellate counsel simply mischaracterized the context of remarks made during the closing, and the Appellate Division recognized it.

In any event, the question before me, again, is not whether the Appellate Division was correct, but rather, whether fairminded jurists could disagree as to whether it was correct. Petitioner cannot come anywhere near meeting the standard for habeas corpus relief on this point, and I therefore reject it.

## CONCLUSION

The petition is denied and the case is dismissed. A certificate of appealability will not issue as the petition fails to raise any substantial issues. The Court certifies pursuant to 28

U.S.C. § 19l5(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See <u>Coppedge v. United States</u>, 369 U.S. 438 (1962). The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
      June 28, 2017